JGREMILLION, Judge.
In this case, we granted the writ application of the relator, Carrol Meche and stayed all proceedings pending further action by this court. We gave both Meche and the State an opportunity to file supplemental briefs and request oral argument. After a thorough review of the applicable law, we grant Meche’s writ and make it preemptory, grant his Motion to Quash, and remand the matter for further proceedings.
PROCEDURAL HISTORY
Meche was charged by bill of information with having violated two Lafayette Parish ordinances. The bill of information stated that from May 29, 1997 through June 11, 1997, and from June 14, 1997 through June 19, 1997, Meche intentionally, willfully, and unlawfully kept and maintained upon his premises fowl which, by their frequent or habitual noise, disturbed the peace and quiet of his neighborhood in violation of Lafayette Parish Ordinance § 14.5-6. The bill of ^information further charged that from June 12, 1997 through June 13, 1997, Meche willfully and unlawfully exceeded the maximum permissible sound pressure level of fifty-five decibels between 7:00 A.M. and 10:00 A.M., and exceeded fifty decibels between 10:00 P.M. and 7:00 A.M., in violation of Lafayette Parish Ordinance § 14.5-11. Meche filed a motion to quash the bill of information, which the trial court denied following a hearing. It is from the denial of that motion that Meche seeks this writ of review.
FACTS
Meche and his next-door neighbor, Mike France, live in the Francois Subdivision in the city of Carenero. In early 1997, France sued Meche in the Fifteenth Judicial District Court for damages and injunctive relief, alleging that roosters kept by Meche at his home made excessive noise. After a trial on the merits on March 26, 1997, the trial court dismissed France’s petition by a final judgment signed on May 19, 1997. France also filed a complaint affidavit with Carenero on February 18,1997, stating that since January 18, 1997, the first day that Meche started keeping the fighting roosters, he and his wife were awakened at 4:00 A.M. by the repetitive crowing that continued every half-hour throughout the morning. The affidavit stated that Meche violated Carenero City Ordinance 96-001 dealing with noisy animals or fowl. These charges brought by Carenero were dismissed by the Magistrate due to the district court’s ruling in the civil case against Meche.
On May 28, 1997, France lodged a complaint about the crowing roosters to the Lafayette Parish Sheriffs Department because he was dissatisfied with the Carenero Police Department’s handling of previous complaints. The deputy sheriff fewho was dispatched to the subdivision filed a report, and on July 15, 1997, Meche was charged by bill of information with having violated the Lafayette Parish ordinances in question. This bill of information formed the basis for the motion to quash and the subsequent writ application.
ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, Meche alleges that because Carenero has its own municipal ordinance pertaining to noisy animals or fowl, the district attorney cannot file *849 charges against him for the violation of parish ordinances dealing with the same subject matter because the parish cannot enforce its ordinances outside of its jurisdiction. The questions we shall answer are whether a Lafayette Parish ordinance can preempt Car-encro’s municipal ordinance, and whether the parish ordinance is concurrent with the municipal ordinance where both governing authorities have an ordinance covering the same subject matter.
PREEMPTION
La.R.S. 33:361(A) provides for the powers of a municipality as follows:
Except as otherwise provided in this Part, a municipality shall be vested with all powers, rights, privileges, immunities, authorities, and duties heretofore possessed in accordance with all constitutional and statutory provisions with respect thereto. A municipality is further authorized to exercise any power and perform any function necessary, requisite, or proper for the management of its affairs not denied by law.
The powers granted to police juries and other parish governing authorities are set forth in La.R.S. 33:1236. The provisions of La. R.S. 33:1391 constitute continuing authorization for the Parish of Lafayette and the City of Lafayette to establish a unified city-parish government. According to La.R.S. 33:1391(A), the unified city-parish government for the Parish of Lafayette and the City of Lafayette shall not include the ligovernment of any municipality in Lafayette Parish other than the City of Lafayette. Carenero is one such excluded municipality. The Lafayette Parish Council was authorized to create by resolution the Lafayette City-Parish Charter Commission consisting of nine persons, each to be a resident and qualified voter of Lafayette Parish. The Lafayette Parish Council was given authority to appoint three commission members, two of whom must reside outside of the City of Lafayette. One commission member was also to be appointed by the majority vote of the mayors of the municipalities of Broussard, Carenero, Duson, Scott, and Youngs-ville. Therefore, the municipalities were represented on the Charter Commission, but the plan that adopted the home rule'Charter of government" merging the governments of the Parish of Lafayette and the City of Lafayette excluded the government of any municipality within the Parish of Lafayette other than the City of Lafayette. '
Meche alleges that since La.R.S. 33:361 gives municipalities the power to perform any function “necessary, requisite, or proper for the management of its affairs not denied by law,” and the city-parish charter of Lafayette excludes Carenero from its effects, the parish cannot enforce its ordinances on noisy animals and fowl when Carenero had its own ordinance dealing with the same subject matter.
Most of the jurisprudence deals with the situation where a state statute preempts a municipal ordinance because the offense is already defined and punishable as a felony under state law. There is no jurisprudence directly on point pertaining to the issue of whether a parish can file charges when the municipality has its own ordinance covering the same subject matter and where the city has already filed its own municipal charges, which were subsequently dismissed. However, one older case, State v. Orr, 152 La. 1031, 95 So. 211 (1922), dealing with an ordinance pertaining to stock running at large, offers some guidance. ' In Orr, the defendant argued that an East Baton Rouge Parish ordinance was ultra vires, and, therefore, illegal on the ground that it did not exempt from its operation the City of Baton Rouge, a municipal corporation in the parish that adopted it. Hence, the defendant argued that the legislative, power of the police jury did not extend over the territory contained within the boundaries of the city, and that, since the ordinance included that territory which by the creation of the municipality was withdrawn from the exercise of such power by the police jury, the ordinance was null and void. In reaching its ultimate decision, the court interpreted the ordinance as having included within its scope the City of Baton Rouge, and found the ordinance illegal, but only to the extent that it included the City of Baton Rouge.
*850 In the case sub judice, the circumstances are similar to Orr in that Lafayette Parish, by filing charges against a resident of Carenero, erroneously included the municipality of Carenero within its legislative scope. La.R.S. 33:1391(A) states that the unified city-parish government for the Parish of Lafayette shall not include the government of any municipality in Lafayette Parish other than the City of Lafayette. As part of its special powers, the Lafayette City-Parish government was given the power to pass all ordinances requisite to or necessary for the safety, health, peace, and good order of the parish. Since Carenero, a municipal corporation within the parish of Lafayette, was excluded from the unified city-parish government, and because the parish was given powers to pass ordinances only for the good order of Lafayette Parish, it follows that the unified city-parish government cannot enforce its ^ordinances in Carenero, but, rather, Carenero is allowed to enforce its ordinances for the good of its residents.
Carenero has a Mayor’s Court, and, pursuant to La.R.S. 33:441, a mayor’s court within a municipality has “jurisdiction over all violations of municipal ordinances,” and the “may- or may try all breaches of the ordinances and impose fines or imprisonment, or both, provided for the infraction thereof.” Therefore, the Mayor’s Court in Carenero, by statute, would be the proper forum to prosecute violations of Carencro’s municipal ordinances.
At the hearing on the motion to quash, the State relied on language contained in an Attorney General opinion. Although not binding on a court, we will discuss the Attorney General opinions on this subject as they have persuasive authority. Op. Att’y Gen. No. 82-457, p.l (July 27, 1982), concerning the extent of a parish’s authority over its municipalities, stated as follows:
It has been the opinion of this office that the Louisiana Legislature through Title 33 of the Louisiana Revised Statutes has given complete control and jurisdiction over the incorporated areas of a municipality to the governing body of each particular municipality. This title also gives the complete control and jurisdiction of all unincorporated areas of a parish to the parish police jury. The parish governing authorities and the municipal governing authorities are separate and distinct governing bodies and neither can legally exert its authority outside its jurisdiction.
Thus, it is the opinion of this office that a parish governing body has no general power or authority over incorporated municipalities within the parish.
Other Attorney General opinions concern specific factual situations involving both parishes and municipalities. In Op. Att’y Gen. No. 86-296 p.l (May 9, 1986), the issue was the extent of the Parish Police Jury’s authority to revoke the dedication of streets when the streets are found within the corporate limits of a bLawrason Act Municipality. The opinion, using the language of Title 33 stated that the “revocation by the parish police jury of the dedication of stregts within the corporate limits of the village of Folsom was invalid.”
In Op. Att’y Gen. No. 92-84, p.l (March 24, 1993), an inquiry was made as to whether the parish may define closing hours for retail establishments selling alcoholic beverages within a municipality. The opinion found that the “municipality is given the authority to regulate. the closing time of bars and similar establishments located within the corporate limits of the municipality” and that “the parish police jury does not have the authority to impose parish restrictions on such establishments located within the corporate limits of the municipality.”
In Op. Att’y Gen. No. 95^413, p.l (December 14, 1995), the Attorney General determined that a police jury can adopt with voter consent an ordinance amounting to a Sunday closing law under La.R.S. 51:191, and that, once voted on, such a law would apply to the municipalities as. well. However, a municipality’s electors could then opt out of the blue law pursuant to an election. The opinion again cited La.R.S. 33:361 and stated: “In Attorney General opinion 92-84, this office took the position that the laws and ordinances of a municipality take precedence within the jurisdiction of that municipality over those laws and ordinances of the parish in which the municipality is located when a conflict exists.” Hence, the thrust of 95-413 *851 is that, when an entire parish approves a particular ordinance, any municipality within the parish which has a conflict, can override the law by voting to opt out of the parish-wide ordinance.
^However, at the hearing on the motion to quash, the State, relying on Attorney General Opinion 95-413, argued that a conflict must exist before one ordinance will supersede the other and, because Carenero adopted a similar ordinance as that of the parish,[1] Carenero would have to opt out of the ordinance in order for its municipal ordinance to supersede the parish ordinance. Thus, a question which must be resolved in this ease is whether a conflict has to exist between a parish ordinance and a municipal ordinance in order for the municipal ordinance to supersede the parish ordinance. We find that no conflict need exist.
In studying the opinions of the Attorney General, we find that only Op. Att’y Gen. No. 95-413 (December 14, 1995), references a conflict between the ordinances. All other pertinent opinions specifically state that the parish governing authorities and the municipal governing authorities are separate and distinct governing bodies, and that neither can legally exert its authority outside its jurisdiction. Thus, we find that the language in Attorney General Opinion 95-413 does not limit the ranking of the ordinances to conflict situations and is, therefore, of no moment. Moreover,-no such distinction was made in Orr. Accordingly, we hold that it is not necessary that a conflict exist between parish and municipal ordinances in order for the parish to be denied jurisdiction within an incorporated municipality; a parish simply cannot enforce it ordinances upon the citizens of an incorporated municipality.
bFurther, we note that under La.R.S. 33:361 municipalities such as Carenero have the power to perform any function “necessary, requisite, or proper for the management of its affairs not denied by law” and city-parishes such as Lafayette have the power and control to exercise the functions necessary for the proper management of their unincorporated territories. Carenero was not included within the unified Lafayette city-parish government. La.R.S. 33:1391. Orr, 95 So. 211, suggests that a parish ordinance should be declared invalid as to an incorporated city situated within the territory of the parish governing body which created the ordinance. Because of that reasoning in Orr, and because the Lafayette City-Parish government specifically excluded Carenero, it lacked the authority to charge a resident of Carenero with violations of ordinances enacted for the common good of the people who reside within the City of Lafayette and the unincorporated areas of the Parish of Lafayette.
Pursuant to statutory and constitutional authority, political subdivisions of the state may act jointly or make agreements between themselves to perform certain functions and activities. La. Const, art. VI, § 20 states:
Except as otherwise provided by law, a political subdivision may exercise and perform any authorized power and function, including financing, jointly or in cooperation with one or more political subdivisions, either within or without the state, or with the United States or its agencies.
The term “political subdivision” is defined as “a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions.” La. Const, art. VI, § 44(2). La.R.S. 33:1324 provides a grant of authority to parishes, municipalities, and police juries to act jointly and provides in pertinent part as follows:
hoAny parish, municipality or political subdivision of the state, or any combination thereof, may make agreements between or among themselves to engage jointly in the construction, acquisition or improvement of any public project or improvement, the promotion and mainte- *852 nanee of any undertaking or the exercise of any power, provided that at least one of the participants to the agreement is authorized under a provision of general or special law to perform such activity or exercise such power as may be necessary for completion of the undertaking. Such arrangements may provide for the joint use of funds, facilities, personnel or property or any combination thereof necessary to accomplish the purposes of the agreement, and such agreements may include but are not limited to activities concerning:
(1) Police, fire and health protection.
The language “may exercise and perform any authorized power and function ... jointly or in cooperation with one or more political subdivisions” contained in La. Const, art. VI, § 20, together with the language “may make agreements between and among themselves to engage jointly” contained in La.R.S. 33:1324, suggests that the powers of the parishes, municipalities, and other political subdivisions of the state are otherwise separate unless there is an agreement to act jointly or in cooperation with another subdivision. No such agreement exists in the instant case.
CONCURRENT JURISDICTION
The trial court, in denying the motion to quash, evidently found merit in the State’s argument that a conflict would have to exist between a parish ordinance and a municipal ordinance in order for a municipal ordinance to supersede the parish ordinance. We will, therefore, address the issue of whether municipalities and parishes may exercise concurrent jurisdiction.
It is well settled that the state and the various municipalities have concurrent jurisdiction within the municipalities. State v. Norwood, 351 So.2d 122 (La.1977); Bush ex rel. State v. Williams, 504 So.2d 1060 (La.App. 1 Cir.), writ denied, 505 So.2d 1131 (La.1987). The court in Bush stated:
We are aware that concurrent jurisdiction of city and district courts as well as the concurrent authority of the district attorney and city prosecutor to file charges and prosecute under respective state criminal statutes and city ordinances may unfortunately result in a “race to the courthouse.” A “race to the courthouse” in turn results in a waste of funds and manpower by the offices of the district attorney and parish attorney or city prosecutor. An additional problem was stated by the Louisiana Supreme Court as follows: “We know of no constitutional principle that prevents the filing of appropriate charges against a defendant in several courts of concurrent jurisdiction. If, however, jeopardy attaches in one court, claims of double jeopardy will prevent the defendant from being tried in another court for the same offense.” State v. Norwood, 351 So.2d at 124. However deplorable the situation may be, the solution to this problem rests with the legislature, not the courts.
Id. at 1063.
The case sub judice involves municipal charges and parish charges rather than municipal charges and state charges. Nonvood and Bush dealt with state criminal statutes and similar city ordinances, instead of parish ordinances and similar city ordinances. State criminal statutes govern the entire state for the good of the people of the State of Louisiana, while each municipality and parish are given their own respective authority to pass ordinances for the protection and welfare of the residents who live within them territories. Further, the police power of the State shall not be abridged. La. Const, art. VI, § 9(B). Therefore, there is concurrent jurisdiction in municipalities when there are respective state criminal statutes and city ordinances. Also, concurrent exercise of the police power by the State and local governments has been confirmed by La.R.S. 33:4890. No similar statute can be found giving concurrent exercise of the police power to the parish and municipalities, other than La.R.S. 33:1324, which provides a grant of authority to parishes, municipalities, and police juries to make agreements between and among themselves to act jointly.
_jL2¡The State’s reliance on Op. Att’y Gen. No. 95-413 (December 14, 1995), in arguing that a conflict between the parish and municipal ordinances must exist in order for the municipal ordinance to supersede the parish ordinance was misplaced. Based upon the guidance we gleaned from Orr and the above *853 statutes and applicable opinions, we find that the City-Parish of Lafayette had no authority to prosecute criminal charges against a Carenero resident for violations of the parish ordinance in this ease. So finding, we reverse the holding of the trial court and grant Meche’s motion to quash the bill of information.
ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE
Meche’s second and third assignments of error address the constitutionality of the Lafayette City-Parish ordinances with which he is charged. Because we have granted the relief he prayed for, we decline to address these assignments of error.
CONCLUSION
Municipalities are authorized to exercise any power and perform any function necessary, requisite, or proper for the management of their affairs not denied by law, and parish governing authorities are given the same powers over their respective jurisdictions. Furthermore, there is no statutory authority granting parishes and municipalities concurrent exercise of their police powers. Because the City Parish Government of Lafayette excludes the municipality of Car-enero, it has no authority to exercise its legislative powers within the territory of Car-enero. Accordingly, we find that Lafayette Parish had no authority to prosecute charges alleging the violation of its city-parish ordinances arising within the municipality of Car-enero. Therefore, Meche’s writ application is granted and made preemptory and his Motion to Quash is granted.
WRIT GRANTED AND MADE PREEMPTORY.

. The Carenero municipal ordinance is identical to the Lafayette city-parish ordinance. There is only one other ordinance in Carenero dealing with fowl which is different than the ordinance of the parish. This Carenero Ordinance, § 4-1, states, "It shall be the duty of every person raising or keeping chickens ... to keep them in a pen, coop, or enclosure and the pen, coop, or enclosure shall be distant at least fifty (50) feet from every building or structure used for sleeping, dining or living...."